**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSEPH DOWDELL a/k/a Claude Dowdell Petitioner | * * * | |
| v. | * * | Civil Action No. RWT-04-3659 |
| JON P. GALLEY, *et al.* Respondents | * * | |

oooOooo

**MEMORANDUM OPINION**

Pending is a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 filed by Joseph Dowdell, a state prisoner, challenging his 1979 convictions in the then Criminal Court of Baltimore[1] for rape, attempted armed robbery, and use of a deadly weapon. Respondents, Jon P. Galley, Warden of the Western Correctional Institution and J. Joseph Curran, Attorney General of the State of Maryland, through counsel, have filed a response in opposition and supporting exhibits. Petitioner has filed a reply.[2]

Upon review of the pleadings, the Court finds no need for an evidentiary hearing. See 28 U.S.C. Section 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the reasons that follow, the Petition will be denied.

**I. Facts**

On May 26, 1979, Joseph Dowdell was serving time in the Maryland House of Correction in Jessup for robbery, when he was moved to the "Camp Center," a minimum security facility. Paper No. 11, Exhibit 2 at 23. That same day, he escaped from Camp Center by walking out of the facility

---

[1] This court is now the Circuit Court for Baltimore City.

[2] By Order entered June 24, 2005, the Court granted Petitioner additional time to reply to Respondents' assertions of procedural default.

with a group of visitors. On May 27, 1979, two sisters, Geraldine and Gail Kelly reported to police that they had been raped. Both women identified Dowdell as their assailant through photograph arrays and in their court testimony. Id. at 26, 61, 84-9.

In her report to the police and in court, Geraldine Kelly stated that on May 27, 1979, a man identifying himself as "Bay-Bay" entered her house and began a conversation. "Bay-Bay" told her he had just come from the Maryland House of Correction and that he had brought two letters from his friend Jerome Jackson. Geraldine Kelley testified that Jerome Jackson was her boyfriend at the time. At some point later that day, Gail Kelly discovered her purse had been ransacked and approximately $80.00 was missing. Id. at 25-39, 60-70. Dowdell then wielded a butcher knife to force the women and Gail Kelly's five-year old daughter into the bedroom. While continuing to wield the knife, Dowdell took the two women, in turn, to the living room and raped each one at knife point. Id.

Jerome Jackson, who was interviewed by police detectives at the Maryland House of Correction, identified Dowdell in court as his friend "Bay-Bay." At trial, Jackson testified that upon learning Dowdell was being transferred to the Camp Center, he gave Dowdell two letters and asked him to deliver them to his girlfriend, Geraldine Kelly. Jackson testified that he provided Dowdell with the address and directions to Geraldine's house. Id. at 99-105.

## II. Procedural History

On November 2, 1979, following a jury trial in the Criminal Court of Baltimore, Petitioner was convicted of two counts of first degree rape, two counts of attempted armed robbery, and two counts of use of a deadly weapon. He was sentenced to two terms of life imprisonment on the rape convictions, two twenty-year terms of imprisonment on the attempted robbery convictions, and three

years on the handgun conviction.

Petitioner noted an appeal to the Court of Special Appeals of Maryland. The sole claim presented was that the administrative judge had abused his discretion by declining to grant a continuance. The Court of Special Appeals rejected this argument and affirmed the convictions in an unreported opinion filed August 7, 1980. Paper No. 11, Exhibit 5. The Court of Appeals denied certiorari on March 10, 1981. Paper No. 11, Exhibit 16 (indicating that the Court of Appeals denied certiorari at 289 Md. 735 (1981) (table)).

On August 27, 1981, Petitioner filed a pro se petition for post conviction relief under the Uniform Post Conviction Procedure Act, Md. Code Ann., Article 27, § 645A.[3] The Petition, as amended and consolidated, alleged ineffective assistance of counsel for: 1) failing to fully investigate and prepare a defense; 2) failing to explain to the trial and administrative judges that Petitioner did not arrive in Baltimore until a few weeks prior to trial; 3) failing to prepare for trial until eight days before trial when his appearance had been entered more than three months prior; 4) self-confessed incompetency of counsel; 5) failing to call witnesses; and 6) failing to object to jury instructions concerning the advisory nature of the charge to the jury. Paper No. 11, Exhibits 6-8. Additionally, Petitioner claimed that he was: 7) denied effective assistance of appellate counsel; 8) denied the right to be present at every stage of trial (voir dire); 9) denied a fair trial; 10) denied the right of compulsory process to secure testimony or other evidence; 11) denied due process by use of an impermissibly suggestive identification; 12) allowed insufficient time to present his defense; and 13) denied a fair trial due to the conduct of the judge. See id.

---

[3]Prior to October 1, 2001, the Maryland Post Conviction Act was codified in Article 27 of the Maryland Code, sections 645A through 645-I.

Post conviction hearings were conducted before Judge William H. Murphy, Jr. In an opinion dated May 4, 1983, Judge Murphy granted a new trial on the claim of ineffective assistance of trial counsel. Paper No. 11, Exhibit 15. Judge Murphy, however, resigned from the bench before the Opinion was filed with the court clerk. On appeal by the State, the Court of Special Appeals of Maryland ruled the Opinion a nullity, reversed the grant of post conviction relief, and remanded the matter for a new hearing. Paper No. 11, Exhibit 16.

A new hearing was held on September 18, 1984, before Judge Thomas Noel. Counsel for the parties agreed that the evidence presented to Judge Murphy would be the basis for the post conviction court to issue a ruling, and no additional testimony was needed. Paper No. 11, Exhibit 17. On March 27, 1986, the state post conviction court granted a new trial based on ineffective assistance of counsel due to failure to adequately request a postponement and to preserve a record of the postponement request. Paper No. 11, Exhibit 18.

The State appealed. On December 1, 1987, the Court of Special Appeals of Maryland reversed the order and reinstated the convictions based on the post conviction court's application of a pre-Strickland [4] standard for ineffective assistance. See State v. Dowdell, 73 Md. App. 172, 188 (1987); Paper No. 11, Exhibit 21. The appellate court ruled that trial counsel's representation had met the Strickland standard. See id. Specifically, it concluded that Petitioner had failed to satisfy the first prong of the Strickland standard by demonstrating deficient legal representation. See id. at 183-85. Further, the Court determined that under the second prong of Strickland, there would not have been any actual prejudice even if representation had been deficient. See id. at 186-88.

Petitioner then filed for federal habeas relief in the United States District Court for the

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

4

District of Maryland. On July 14, 1993, the federal petition was dismissed for failure to exhaust available state remedies. See Civil Action, N-92-1587 (D. Md. 1993).

Petitioner returned to state circuit court in 1993 to litigate the unresolved claims raised in his original state post conviction petition. No hearing was held. On June 27, 2002, the Circuit Court for Baltimore City granted Petitioner post conviction relief in the nature of a new trial. Paper No. 11, Exhibit 26. In its Memorandum and Order, the post conviction court found that trial counsel was ineffective for initiating trial preparations only eight days before trial, not interviewing relevant witnesses, failing to adequately investigate the case, and failing to request a continuance to obtain a witness's psychiatric records. The post conviction court determined that these deficiencies had prejudiced Petitioner's defense. See id. The remaining claims were denied. See id.

The State filed for leave to appeal. The Court of Special Appeals granted the State's application, and the case was transferred to that court's regular appeal docket. Paper No 11, Exhibits 27 & 29. The State argued the grant of a new trial based on ineffective assistance of trial counsel was in error. Petitioner, who was represented by counsel, filed a motion in opposition, arguing the appeal was untimely, he was entitled to a new trial for the reasons stated by the post conviction court, and that because the trial court had improperly instructed the jury, the jury instructions were merely advisory. Paper No. 11, Exhibit 28. The Court of Special Appeals reversed the post conviction court. Paper No. 11, Exhibit 30. The appellate court held that its prior opinion resolved whether trial counsel was ineffective for preparing for the case eight days before trial and for failing to notify the trial court that his client had arrived in Baltimore just a few weeks prior to trial. See id. Further, the Court concluded that Petitioner had failed to demonstrate prejudice due to counsel's alleged ineffective assistance. See id.

Dowdell then petitioned for writ of certiorari in the Court of Appeals of Maryland. In his petition, he presented two issues:

> 1. Did the Court of Special Appeals err in denying the motion to dismiss the State's appeal where leave to appeal from the grant of post-conviction relief was filed sixty days after the Circuit Court filed its order with the court clerk?
>
> 2. Did the Court of Special Appeals err in concluding that its prior decision reversing a grant of post-conviction relief barred the judge from deciding issues not ruled on by the trial judge prior to the previous appeal?

Paper No. 11, Exhibit 31. The Court of Appeals denied certiorari review on December 16, 2003. Paper No. 11, Exhibit 32.

### III. Claims Presented

Petitioner presents twelve claims in this application for federal habeas corpus relief. The first claim alleges:1) ineffective assistance of trial counsel. Specifically, he alleges that: (a) trial counsel did not fully investigate and prepare a defense; (b) trial counsel was ineffective by failing to fully explain to the administrative judge and to the trial judge the fact that Dowdell did not arrive in Baltimore until a few weeks before trial; (c) trial counsel was ineffective by not working/preparing for trial until eight days before trial when his appearance was entered more than three months earlier; d) trial counsel was ineffective and, in fact, admitted incompetency; e) trial counsel was ineffective in failing to call witnesses; and f) trial counsel was ineffective in failing to object to the jury instructions concerning the advisory nature of the charge to the jury. Paper 1 at 11.

The other claims are: 2) Appellate counsel was ineffective in providing competent representation; 3) Petitioner was denied the right to be present at a critical stage of trial- the voir dire examination of prospective jurors; 4) Petitioner did not receive a fair trial as required by the Fourteenth Amendment of the United States; 5) Petitioner was denied compulsory process to secure

testimony or other evidence; 6) Petitioner's conviction was obtained by the use of impermissibly suggestive identification which violated his right to due process of law; 7) The trial judge erred by not granting Petitioner a postponement or continuation in order for Petitioner to prepare a defense; 8) The conduct of the trial judge rendered the trial unfair; 9) The Court of Special Appeals erred in the interpretation and application of the test specified in Strickland; 10) Petitioner was denied the right to be present at a critical stage of his trial, viz, the postponement hearing; 11) trial counsel did not have a suppression hearing on the issue of identification. Apparently, a motion was filed; however, for reasons unknown to Petitioner, it was withdrawn; and 12) No semen comparison was made or requested by trial counsel, which request could have resulted in obtaining a postponement in order to obtain hospital records concerning the alleged victims.  Paper 1 at 11-12.

**IV. Threshold Considerations**

    **A.  Federal Law or Constitutional Protection Must Be Implicated**

Jurisdiction to review a federal habeas claim filed by a state prisoner is conferred where a federal right or Constitutional protection is implicated. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991).  "[A] state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States'" Billotti v. Legursky, 975 F.2d 113, 119 (4th Cir. 1992) (quoting Engle v. Isaac, 456 U.S. 107, 119 (1982). Thus, questions of law which do not implicate federal rights are not cognizable on federal habeas review.

In claim 11, Petitioner fails to allege violation of a federal law or constitutional protection. In the absence of any allegation of infringement of a specific federal protection, this claim is not cognizable under 28 U.S.C. §2254 and must be dismissed.

**B. Procedural Default**

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented by pursuing remedies available in state court. See Rose v. Lundy, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction. See 28 U.S.C. § 2254(b) and (c); O'Sullivan v. Boerckel, 526 U. S. 838, 119 S. Ct. 1728 (1999). In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of post conviction proceedings.[5] Exhaustion is not required if at the time a federal habeas corpus petition is filed, the petitioner has no available state remedy. See Teague v. Lane, 489 U. S. 288, 297-98 (1989); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. See Coleman v. Thompson, 501 U.S. 722, 749-50; Murray v. Carrier, 477 U. S. 478 (1986). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999). Maryland's requirement that certain claims be presented on direct appeal, see Md. Ann. Code Art. 27, §645A(c), constitutes an adequate and independent state procedural rule. See Johnson

---

[5]The Maryland Post Conviction Procedure Act initially provided no limit on the number of post conviction petitions permitted. Post convictions were limited to two as of July 1, 1986, and then to one as of October 1, 1996. Having already pursued state post conviction relief, Dowdell is limited to seeking a reopening of his post conviction proceedings if the post conviction court determines the action is "in the interests of justice." Md. Code Ann., Crim Pro. Art., § 7-104.

v. Smith, 981 F. Supp. 944, 948 (D. Md. 1997).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. See Murray v. Carrier, 477 U. S. at 495; Wainwright v. Sykes, 433 U.S. 72, 86 (1977). Cause for procedural default must be more than mistake or ignorance. Under some circumstances, ineffective assistance of counsel as determined under Strickland, 466 U. S. 668 (1984) may constitute cause. See Edwards v. Carpenter, 529 U. S. 446, 449 (2000).[6] Otherwise, "in order to demonstrate 'cause' for the default [petitioner] must establish that 'some objective factor external to the defense impeded counsel's [or petitioner's] efforts' to raise the claim in state court at the appropriate time." Breard v. Pruett, 134 F.3d 615, 620 (4th Cir. 1998) (quoting Murray v. Carrier, 477 U. S. at 488).

Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. See Schlup v. Delo, 513 U. S.298, 314 (1995). The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U. S. at 496.

In light of these considerations and upon review of the record, it is clear that claims 10 and 12 were never raised in any state court. Where, as here, there is neither an allegation of nor demonstration of cause and prejudice, nor a claim of actual innocence, the defaulted claims may not be addressed on federal habeas review. In addition, claims 1(d), 1(e), 1(f), 2, 3, 4, 5, 6, 7, 8, and 11

---

[6]Notably, Petitioner does not assert ineffective assistance as cause for his procedurally defaulted claims. Paper No. 14.

9

are procedurally defaulted. Each was presented to the state post conviction court and resolved against Petitioner. Paper No. 11, Exhibit 26. Petitioner did not further challenge these rulings in either the Court of Special Appeals of Maryland or the Court of Appeals of Maryland.

## V. Standard of Review

Remaining for review as cognizable and properly presented to the highest state court are claims 1(a), 1(b), 1(c) and 9. These claims are reviewed subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA). This law modified the federal court's role in habeas proceedings to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. See Bell v. Cone, 535 U.S. 685, 693 (2002).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at

413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-410. Furthermore, when a state court has made a finding of fact, it is presumed to be correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## VI. Analysis

### A. Ineffective Assistance Claims

Constitutionally ineffective assistance of counsel claims are governed by standards well-settled since Strickland v Washington, 466 U.S. at 668. To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice as a result. See id. at 687. To demonstrate actual prejudice from deficient performance, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. According to Strickland, there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential when scrutinizing counsel's performance. See id. at 688-89. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. See id. at 697.

Dowdell contends that trial counsel provided ineffective assistance by failing to: (a) fully

11

investigate and prepare a defense; (b) explain to the administrative judge and to the trial judge the fact that defendant did not arrive in Baltimore until a few weeks before trial; and (c) prepare until eight days before trial. Paper No. 1 at 11.  These claims were considered and rejected by the Court of Special Appeals on appeal of Judge Noel's initial post conviction ruling. Paper No. 11, Exhibits 21 & 30.

In its decision reversing the grant of a new trial and reinstating the convictions, the Court of Special Appeals ruled, "...the judgment of the post-conviction hearing judge was erroneous in several different regards, any one of which would mandate the reversal." Paper No. 11, Exhibit 21 at 5.  It held that the post conviction court had used the wrong test for measuring ineffective assistance. "The test used by the court was not the now clearly controlling test according to Strickland v. Washington but a pre-Strickland test, now obsolete, articulated by this Court in Ward v. State, 52 Md. App. 88, 447 A.2d 101 (1982)." Paper No. 11, Exhibit 21 at 5. Thus, the appellate court concluded: "The performance of counsel in this case was measured according to a legal standard which is no longer controlling." Id.

Applying a Strickland analysis to the case,  the Court of Special Appeals also rejected Dowdell's claim of deficient assistance of counsel.  The Court observed:

> David Eaton, Esquire, was assigned the case by the Public Defender's Office on October 24, 1979, eight days before trial. He interviewed Dowdell on that very day and was informed by his client of an alibi defense. The claimed ineffectiveness of assistance is that counsel did not more aggressively and successfully pursue a postponement of the trial date to allow the defense more time to substantiate the alibi.

Paper No. 11, Exhibit 21 at 4.

The Court of Special Appeals went on to observe that  Dowdell was unable to provide his attorney with the names of the visitors to the Jessup Correctional Facility with whom he had

purportedly driven to Washington, D.C. the day of his escape from Camp Center, the name or specific location of the Washington, D.C. Hotel where he spent the night, the assumed name under which he purchased a an airplane ticket to Chicago the following day (the day of the rapes), or the names of the family members he allegedly visited after he traveled from Chicago to Gary, Indiana. See id. The Court noted that despite the "decidedly elusive quality to the alibi" trial counsel sought postponements from both the Administrative Judge and the Trial Judge. See id. In both instances, he based the request on the status of defense preparations, including the nature of the alibi defense and the date on which he had been assigned the case. See id.

The Court determined that trial counsel had pursued "every possibility of substantiating" Petitioner's alibi, "not withstanding the utter failure of Dowdell to furnish him any meaningful lead or provide him any assurances of credibility." Paper No. 11, Exhibit 21, at 7. The appellate court found:

> ...nothing remotely approaching error in the performance of Mr. Eaton in this case, let alone a failure to measure up to the reasonable or normal standard prevailing in the criminal courts of Baltimore City. Indeed, had Mr. Eaton made the determination not even to pursue what strikes us, exercising our independent constitutional appraisal, as this will-o'-the wisp alibi, we would be hard pressed to find error even there. As Strickland pointed out, at 466 U.S. 691, 104S. Ct. 2066: "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." See also State v. Calhoun, 306 Md. 692, 732-734, 511 A. 2d 461, 481-482 (1986).

Paper No. 11, Exhibit 21 at 6.

Turning to the actual prejudice prong of the Strickland test, the Court stated:

> Far from an affirmative showing of prejudice and an affirmative finding of prejudice in this case, the conclusion of the court below rested on sheer speculation. The conclusion of the court was, "It is impossible to say what effect, if any, the evidence referred to would have had upon the ultimate verdict." Even if we were refraining from making our own independent appraisal, we would find the court's conclusion flawed for that reason alone.

Paper No. 11, Exhibit 21 at 8.

> *A fortiori*, when we make our own independent appraisal of the prejudice factor, it is not remotely there. We would have to find that a postponement, denied only because of counsel's ineptitude in seeking it, would have provided sufficient time for further preparation which would have produced actual evidence which would probably have caused a different result in this case. To this very day, we have seen no suggestion as to what that evidence might have been.

Id.

In the proceedings that followed, the post conviction court issued a ruling granting relief based on its understanding that the Court of Special Appeals had not resolved the ineffective assistance claims regarding Dowdell's arrival in Baltimore just weeks before trial and counsel's failure to begin working on the case until eight days prior to trial. Paper No. 11, Exhibits 26 & 30. The State appealed. In its opinion, the Court of Special Appeals stated that it had, in fact, resolved these issues against Dowdell in its previous determination, which was the binding law of the case. Paper No. 11, Exhibit 30 at 9. The Court of Special Appeals reiterated that no ineffective assistance had been shown. Paper No. 11, Exhibit 30 at 12.

In light of the deferential standard of review mandated by statute, see 28 U.S.C. § 2254(d), Dowdell has not shown that the state court's decision was an objectively unreasonable application of Strickland. The gravamen of his claims is that counsel did not begin preparing for trial in time to present his alibi, and that counsel was deficient by failing to obtain a postponement. As the Court of Special Appeals of Maryland observed, trial counsel had moved for a postponement, but it was denied. Supra p. 13. Additionally, given the questionable nature of his alibi, Dowdell has not shown that he suffered prejudice from counsel's purported inability to conduct further investigation. He has failed to demonstrate how but for his counsel's alleged deficient performance, the result of his case would have been different. Strickland, 466 U.S. at 668. The state court's rejection of these claims was neither contrary to clearly established federal law, as determined by the United States

14

Supreme Court, nor involved an unreasonable application of that law. There is no basis to disturb the ruling of the state court.

### B. Application of Strickland by the Court of Special Appeals

Petitioner posits that the Court of Special Appeals was in error in its "interpretation and application" of Strickland "in its last decision." Paper No. 1 at 12.  As noted herein, the Court of Special Appeals stated that it had resolved in its previous decision whether trial counsel was ineffective for commencing preparation eight days before trial and failing to notify the trial court that Dowdell had arrived in Baltimore just weeks prior to trial. Supra p. 14.  In addition, the appellate court had rejected Petitioner's remaining claims under Strickland by finding that he had failed to prove he suffered prejudice as a result of the purported errors.  Paper No. 11, Exhibit 30 at 13-18.

After reviewing trial counsel's efforts to discredit the victim's testimony and to question the prosecution's physical evidence, the Court of Special Appeals concluded:

> Clearly, Dowdell's counsel attacked the credibility of the witnesses and the physical evidence. The record is devoid of any evidence that would indicate the value of interviewing witnesses or the victims, or any prejudice from failing to do so. Dowdell has failed to show what information would have been obtained from these witnesses that would have added to what his counsel already knew. As to the police reports, there is no evidence that any such reports existed or what they contained. Finally, Dowdell has failed to demonstrate what information in the victims' backgrounds would have made impeachment of their testimony any more likely than it already was. Dowdell has failed to meet his burden to show that, without counsel's supposed errors, it is likely the result of his trial would have been different.

Paper No 11, Exhibit 30 at 16.  The appellate court also rejected ineffective assistance based on failure to proffer Geraldine Kelly's psychiatric records, stating that Dowdell had failed to sustain his burden to show the content of the records or how they would have affected her credibility.  Paper No 11, Exhibit 30 at 17.  The state court observed this claim was also undermined by the testimony

15

of the second victim, Gail Kelly.  <u>See</u> <u>id</u>.

Petitioner's assertion that the state court misapplied <u>Strickland</u> is unsupported by the pleadings, transcripts, and applicable law. There is no basis here to conclude that in the absence of any of the alleged errors by counsel, the result of the trial would have been different. The state court's ruling was neither contrary to clearly established federal law, as determined by the Supreme Court of the United States, nor involved an unreasonable application of that law.  Accordingly, this claim is denied.

For the above stated reasons, the petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied.  A separate Order consistent with this Memorandum Opinion follows.

| | |
|---|---|
|   10/18/05   |           /s/            |
| Date | ROGER W. TITUS |
| | UNITED STATES DISTRICT JUDGE |